UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERTO ORTIZ<br>    PLAINTIFF | )<br>)<br>) |
| v. | )<br>) |
| LINDA HAN, JULIANNE NASSIF<br>CHARLES SALEMI, ELIZABETH<br>O'BRIEN, AND ANNIE DOOKHAN<br>    DEFENDANTS | ) CIVIL ACTION NO.<br>)<br>)<br>) |

## COMPLAINT AND REQUEST FOR JURY TRIAL

### INTRODUCTION

The Plaintiff, Roberto Ortiz (hereinafter "Mr. Ortiz") was damaged and injured by the actions and failure to act by employees, supervisors, managers, agents, servants and/or executive officers of Commonwealth's agency and departments, specifically the faulty, erroneous and false investigation and examination of alleged cocaine which was allegedly in his possession, which was done by Defendant, Annie Dookhan (hereinafter "Ms. Dookhan") and/or the Hinton State Drug Lab in Jamaica Plain, Boston, MA while being supervised by defendants, Linda Han (hereinafter "Ms. Han"), Julianne Nassif (hereinafter "Ms. Nassif"), Charles Salemi (hereinafter "Mr. Salemi"), and Elizabeth O'Brien (hereinafter "Ms. O'Brien), the four preceding supervisors known collectively hereafter as the "Supervisors." Ms. Dookhan and/or her supervisors, managers and/or colleagues at the said Hinton State Drug Lab falsely and incorrectly provided tainted evidence of certified drug analysis to the police and Essex County District Attorney, who used this corrupted evidence against Mr. Ortiz. This tainted evidence was used to indict and prosecute Mr. Ortiz, and was further presented at his criminal jury trial on January 30, 2007. The result of the trial, after the jury reviewed the claim from Hinton drug lab, was a guilty verdict and Mr. Ortiz was sentenced to 3 and ½ years at MCI-Cedar Junction, which he served completely.

On or about December 18, 2014, Mr. Ortiz' Motion for a New Trial, based on the charge of tainted evidence from Ms. Dookhan's and/or the Hinton State Drug Lab's erroneous certified

drug analysis, was allowed. Later, on or about January 26, 2015, the Commonwealth decided to Nolle Prosequi all of the charges.

## PARTIES

1. The plaintiff, Roberto Ortiz, is a natural person residing in Lynn, Massachusetts.
2. Defendant Linda Han, the former Director of Bureau of Laboratory Sciences, is a natural person on information and belief residing at 1 Gordon Place, Cambridge, MA 02139. At all times material hereto, Defendant Ms. Han was acting under color of law and within the scope of her employment. She is being sued in her individual capacity.
3. Defendant Julianne Nassif, the former Director of the Division of Analytical Chemistry, is a natural person on information and belief residing at 109 Highview Street, Westwood, MA 02090. At all times material hereto, Ms. Nassif was acting under color of law and with the scope of her employment. She is being sued in her individual capacity.
4. Defendant Charles Salemi, the former Lab Supervisor II at the William A. Hinton State Laboratory, is a natural person on information and belief residing at 375 Lowell Street, Reading, MA 01867. At all times material hereto Mr. Salemi was acting under the color of law and within the scope of his employment. He is being sued in his individual capacity.
5. Defendant, Elizabeth O'Brien a former Lab Supervisor I at the William A. Hinton State Laboratory's evidence room, and previously Ms. Dookhan's team leader, is a natural person who on information and belief resides in Massachusetts. At all times relevant hereto, Ms. Nassif was acting under color of law and with the scope of her employment. She is being sued in her individual capacity.
6. Defendant Annie Dookhan, a former Chemist II at the William A. Hinton State Laboratory, is a natural person on information and belief residing in Framingham, Massachusetts at the Massachusetts Correctional Institution – Framingham. At all times relevant hereto, Ms. Dookhan was acting under color of law and with the scope of her employment. She is being sued in her individual capacity.

## JURISDICTION AND VENUE

7. This action arises under Federal Law, specifically 4 U. S. C. § 1983.
8. Venue is appropriate in the District of Massachusetts, as per 28 U. S. C. §1391, as all the events and omissions giving rise to this claim occurred herein.
9. This action is commenced within the three years of when the Plaintiff knew or had reason to know of the injury. It was also commenced within three years of when Plaintiff's underlying wrongful conviction was vacated.

## STATEMENT OF FACTS

10. Ms. Han was the former Director of Bureau of Laboratory Sciences. Ms. Han oversaw the Hinton Lab. Ms. Han failed to provide any regular presence or interaction with lab employees or supervisors, providing a hands off approach which allowed the lab supervisors and employees a free rein to act without penalties. Ms. Han was aware of Ms. Dookhan's abnormal high testing rates as early as 2004. Ms. Han was also aware that the Chemist III position in Ms. Dookhan's room was left unfulfilled.
11. Ms. Nassif is the former Director of the Division of Analytical Chemistry, in which she was supposed to have a day to day oversight responsibilities over several labs, including Hinton Lab. Ms. Nassif also provided little supervision over the lab, holding few meetings with lab technicians and chemists. Ms. Nassif failed to provide any regular presence or interaction with lab employees or supervisors, providing a hands off approach which allowed the lab supervisors and employees a free rein to act without penalties. Ms. Nassif was aware of Ms. Dookhan's abnormal high testing rates as early as 2004. Ms. Nassif was also aware that the Chemist III position in Ms. Dookhan's room was left unfulfilled.
12. Mr. Salemi was the supervisor of the Hinton drug lab from 2003 to 2012. Mr. Salemi failed to enforce protocols that he promulgated for the use of lab technicians and chemists. He also provided little oversight over the chemists at Hinton, which allowed which allowed the lab chemists a free rein to act without penalties. Mr. Salemi was aware of Ms. Dookhan's abnormal high testing rates as early as 2004.

3

Mr. Salemi was also aware that the Chemist III position in Ms. Dookhan's room was left unfulfilled.

13. Ms. O'Brien was a Chemist III and the team leader where Ms. Dookhan worked. Ms. O'Brien had been found to have lied on her resume, as had Ms. Dookhan. As Ms. Dookhan's immediate supervisor, Ms. O'Brien was aware that Ms. Dookhan had also lied on her C.V. but abided the deception. Ms. O'Brien as team leader, was aware of Ms. Dookhan's lab techniques, testing methods, and improbably high testing volume. She was aware that Ms. Dookhan would take samples from the evidence room without logging them out. Ms. O'Brien did not promptly report those violations or intercede to stop them.

14. The problems of the Hinton Lab were many and the Supervisors failed to address any of them sufficiently. The Supervisors provided little to no formal and uniform protocols with respect to many of its basic operations, including training, chain of custody and testing methods. This lack of direction, caused in part by the Hinton Lab's lack of accreditation, allowed chemists to create their own insufficient and discordant practices. The training of chemists at the Hinton Lab was wholly inadequate, limited and lacked uniformity as well as no continuing education to so-called experienced chemists. The quality control system at the lab focused primarily on the lab equipment rather than on the quality of the chemists' work and it was grossly ineffective in detecting malfeasance, incompetence and inaccurate results.

15. Ms. Dookhan was a Chemist II in the Hinton lab. She was hired in 2003 as a chemist to perform routine drug testing and analysis. For almost her entire tenure at the lab, she had the highest rates of testing samples, in fact at some points she was performing at more than 5 times the lab average. A reasonable chemist and supervisor would have known that these rates were impossible if she had been properly testing samples.

16. During her tenure, and particularly during the time relevant to this complaint and to the samples of the drugs Mr. Ortiz allegedly possessed, Ms. Dookhan continuously committed unauthorized access to the evidence room, forging of signatures, and removal of samples improperly. All of these actions occurred under the supposed supervision of the Supervisors. The Supervisors acted to conceal various acts of misconduct, including claim of custody breach, instances of false trial testimony, the

4

misrepresentation of her qualifications and several false positives that suggest the falsification of evidence.

17. Ms. Dookhan was placed on suspension in February 2012, and she resigned on March 8, 2012. In July 2012, the State Police took over the Hinton Lab. In September 2012, the State Police arrested Defendant Dookhan. In January 2013, she was indicted and charged with almost 27 counts of tampering with evidence and obstruction of justice. In November 2013, Ms. Dookan pleaded guilty to 27 counts of misleading investigators, filing false reports, and tampering with evidence.

18. Mr. Ortiz was arrested by the Peabody Police Department on February 12, 2005 for trafficking cocaine, violation of M. G. L. c. 94C, §32E, and possession of heroin, M. G. L. c. 94C, §32C (J).

19. On or about May 4, 2005, Mr. Ortiz was indicted by Essex County Grand Jury on those charges and appeared at arraignment in Essex Superior Court on June 2, 2005.

20. Mr. Ortiz pled not guilty to the charges.

21. The docket number of this case is known as 0577CR0569, captioned Commonwealth v. Roberto Ortiz.

22. A trial by jury convened on January 30, 2007 and lasted until February 5, 2007 at which date Mr. Ortiz was found guilty of Count One, trafficking cocaine, violation of M. G. L. c. 94C, §32E but found not guilty of Count Two, possession of heroin, M. G. L. c. 94C, §32C (J).

23. At the trial, a drug certificate, signed by Ms. Dookhan, was entered in as evidence against Mr. Ortiz. This drug certificate stated that both substances allegedly seized from Mr. Ortiz by police was cocaine and heroin. The Commonwealth of Massachusetts relied upon this certificate to prove the essential element of the charge that he was violating trafficking of cocaine. Without that certificate Mr. Ortiz would not have been found guilty of trafficking cocaine, as the Commonwealth could not have proved he was in fact trafficking in cocaine. The Commonwealth was required to prove beyond a reasonable doubt the essential element that the substance Mr. Oritz was accused of trafficking was in fact cocaine.

24. Mr. Ortiz was sentenced to three (3) and half (1/2) years at MCI-Cedar Junction, Massachusetts State Prison. He served the entire sentence. Mr. Ortiz served

approximately one thousand two hundred seventy-five days (1,275) in MCI-Cedar Junction.

25. On or about December 18, 2014, Mr. Ortiz, through counsel, filed a Motion for a New Trial, based on the charge of tainted evidence from Ms. Dookhan's and/or the Hinton State Drug Lab's erroneous certified drug analysis. His Motion for New Trial was allowed. On or about January 26, 2015, the Commonwealth decided to Nolle Prosequi all of the charges.

26. Ms. Doohkan violated Mr. Ortiz' rights by providing a false or possibly false and/or corrupted drug certificate which provided the trial jury the prime instrument to find Mr. Ortiz guilty of a crime he claimed he did not commit. The Supervisors failed in their duty and responsibility to oversee, manage and correct the submission of corrupted and tainted evidence to a jury trial. The Supervisors failed to provide adequate supervision, management and control over the actions and inactions of Ms. Dookhan or the other employees of the Hinton State Drug Lab as well as their failure to stop, interdict, restrict or otherwise prohibit the presentation of the tainted evidence to the prosecution of Mr. Ortiz, your agency and its personnel were negligent with respect to causing Mr. Ortiz' injuries, of false imprisonment, deprivation of liberty, and a violation of his civil rights.

27. Mr. Ortiz would not have been convicted had the jury in the criminal trial known that the drug certificate was false and/or corrupted and/or not analyzed by Ms. Dookhan who signed the drug certificate.

## COUNT ONE
## CIVIL RIGHTS VIOLATIONS UNDER 42 U. S. C. §1983
(Defendants Ms. Han, Ms. Nassif, Mr. Salemi and Ms. O'Brien)

28. Plaintiff, Roberto Ortiz repeats and re-alleges each and every allegation contained in Paragraphs, One to Twenty-seven as if fully set forth herein.

29. At all times material to this Complaint, the Defendants Ms. Han, Ms. Nassif, Mr. Salemi and Ms. O'Brien were acting under the color of state law in their supervisory

positions at the Hinton Lab, with was testing laboratory samples in connection with criminal prosecutions.

30. Defendants Ms. Han, Ms. Nassif, Mr. Salemi and Ms. O'Brien negligently failed in their duty and responsibility to supervise, monitor, manage, oversee, or review the drug analysis performed by Ms. Dookhan, which was submitted as evidence in criminal trials. The Defendants Ms. Han, Ms. Nassif, Mr. Salemi and Ms. O'Brien failed specifically to supervise the drug analysis performed by Ms. Dookhan regarding the allegations against Mr. Ortiz, which was submitted as evidence in his criminal trials.

31. Had the Supervisors performed their duty and responsibility to supervise the drug analysis performed by Ms. Dookhan regarding the allegations against Mr. Ortiz, a false and/or corrupted drug analysis certificate would not have been submitted to the jury in the trial of Mr. Ortiz, docketed as 0577CR0569.

32. The Supervisors knew that Ms. Dookhan was submitting false and/or corrupted drug analysis, as well as falsely testifying at Court, breaching chain of custody, acted to conceal various acts of misconduct, including chain of custody breach, the misrepresentation of her qualifications and several false positives that suggest the falsification of evidence. Their knowledge and failure to cure or to act to prevent these violations, as well as their failure to provide adequate enforcement of protocols and policies, in the supervision of Ms. Dookhan, was gross negligence amounting to deliberate indifference. *Williams v. Bisceglia*, 115 F. Supp. 3d 184, 188 (2015).

33. The Supervisors are liable for the acts and violations of their subordinate, Ms. Dookhan, because they failed to actively monitor her actions. Further, they created a work environment that encouraged, by eliminating consequences for wrong action, free ranging action by employees of the drug lab.

34. Plaintiff Mr. Ortiz suffered significant injuries as a result of the above violations, including but not limited to incarceration of three (3) and half (1/2) years

## COUNT TWO

### CIVIL RIGHTS VIOLATIONS UNDER 42 U. S. C. §1983

Violation of Fourteenth Amendment; Failure to Train

(Defendants Ms. Han, Ms. Nassif, Mr. Salemi and Ms. O'Brien)

35. Plaintiff, Roberto Ortiz repeats and re-alleges each and every allegation contained in Paragraphs, One to Thirty-Five as if fully set forth herein.

36. At all times material to this Complaint, the Defendants Ms. Han, Ms. Nassif, Mr. Salemi and Ms. O'Brien were acting under the color of state law in their supervisory positions at the Hinton Lab, which was testing laboratory samples in connection with criminal prosecutions.

37. The Defendants Ms. Han, Ms. Nassif, Mr. Salemi and Ms. O'Brien were responsible for providing adequate training, supervision, and discipline.

38. The Defendants Ms. Han, Ms. Nassif, Mr. Salemi and Ms. O'Brien provided inadequate training, no supervision, and ineffective discipline.

39. Ms. Dookhan committed serious acts of misconduct and felt emboldened to do so, based on a complete lack of proper training, non-existent supervision and lack of discipline at all times relevant to this complaint and in regards to Mr. Oritz.

40. The Defendants Ms. Han, Ms. Nassif, Mr. Salemi and Ms. O'Brien were deliberately indifferent to Mr. Oritz' constitutional rights. This deliberate indifference to Mr. Ortiz' rights is shown by providing inadequate training, failing to provide any supervision of chemists, failing to investigate, or discipline, breaches or acts of misconduct, failing to implement policies to ensure quality of work product and compliance with chain of custody measures, and failing to safeguard the evidence submitted to the lab for chemical analysis.

41. By having that policy or lack of formal policy against such behavior, The Defendants Ms. Han, Ms. Nassif, Mr. Salemi and Ms. O'Brien demonstrated callous indifference to the civil rights of Mr. Ortiz.

42. The Defendants Ms. Han, Ms. Nassif, Mr. Salemi and Ms. O'Brien relinquished their duties and responsibility to train, supervise and discipline employees at the

Commonwealth's laboratory accountable for furthering protection of the integrity of the criminal justice system is outrageous.

43. By not properly training Ms. Dookhan and the other chemists, after knowing of their transgressions, the Defendants Ms. Han, Ms. Nassif, Mr. Salemi and Ms. O'Brien violated Mr. Ortiz' due process rights under the Fourteenth Amendment.

44. Plaintiff Mr. Ortiz suffered significant injuries as a result of the above violations, including but not limited to incarceration of three (3) and half (1/2) years

## COUNT THREE
## CIVIL RIGHTS VIOLATIONS UNDER 42 U. S. C. §1983
Violation of Fourth, Fifth, Sixth and Fourteenth Amendment
(Defendant Ms. Dookan)

45. Plaintiff, Roberto Ortiz repeats and re-alleges each and every allegation contained in Paragraphs, One to Forty-Five as if fully set forth herein.

46. The Defendant Ms. Dookhan acted with deliberate indifference to Mr. Ortiz' constitutional rights, when she failed to adequately test the evidentiary sample for Mr. Ortiz' case provided to her by the police department.

47. With deliberate indifference to Mr. Ortiz' constitutional rights, Defendant Ms. Dookhan either intentionally failed to test the sample or intentionally or recklessly cross-contaminated it with other substances.

48. Regardless of the method, Defendant Ms. Dookhan was aware that the results ultimately obtained were false.

49. With a deliberate indifference to Mr. Ortiz' constitutional rights, Defendant Ms. Dookhan knowingly presented false, falsified, forged, and fabricated evidence against Mr. Ortiz.

50. With a deliberate indifference to Mr. Ortiz's constitutional rights, Defendant Ms. Dookhan knowingly gave perjured testimony against him.

51. Based on the above, Defendant Dookhan violated Mr. Ortiz' constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendment.

52. Plaintiff Mr. Ortiz suffered significant injuries as a result of the above violations, including but not limited to incarceration of three (3) and half (1/2) years

## COUNT FOUR
## CIVIL RIGHTS VIOLATIONS UNDER 42 U. S. C. §1983
Malicious Prosecution and Perjury
(Defendant Ms. Dookan)

53. Plaintiff, Roberto Ortiz repeats and re-alleges each and every allegation contained in Paragraphs, One to Fifty-Three as if fully set forth herein.
54. The Defendant Ms. Dookhan acted with deliberate indifference to Mr. Ortiz' constitutional rights, when she failed to adequately test the evidentiary sample for Mr. Ortiz' case provided to her by the police department.
55. With deliberate indifference to Mr. Ortiz' constitutional rights, Defendant Ms. Dookhan either intentionally failed to test the sample or intentionally or recklessly cross-contaminated it with other substances.
56. Regardless of the method, Defendant Ms. Dookhan was aware that the results ultimately obtained were false.
57. With a deliberate indifference to Mr. Ortiz' constitutional rights, Defendant Ms. Dookhan knowingly presented false, falsified, forged, and fabricated evidence against Mr. Ortiz.
58. With a deliberate indifference to Mr. Ortiz's constitutional rights, Defendant Ms. Dookhan knowingly gave perjured testimony against him.
59. Based on the above, Defendant Dookhan violated Mr. Ortiz' constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendment.
60. Plaintiff Mr. Ortiz suffered significant injuries as a result of the above violations, including but not limited to incarceration of three (3) and half (1/2) years

## COUNT FIVE

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Defendants Ms. Han, Ms. Nassif, Mr. Salemi, Ms. O'Brien, and Ms. Dookhan)

61. Plaintiff, Roberto Ortiz repeats and re-alleges each and every allegation contained in Paragraphs, One to Sixty-two as if fully set forth herein.
62. The aforesaid conduct by the Defendants Ms. Han, Ms. Nassif, Mr. Salemi, Ms. O'Brien, and Ms. Dookhan was extreme and outrageous and likely to result in severe emotional distress to Mr. Ortiz, which he did in fact suffer.
63. As a direct and proximate cause of the aforesaid actions and conduct by the Defendants Ms. Han, Ms. Nassif, Mr. Salemi, Ms. O'Brien, and Ms. Dookhan, Mr. Ortiz suffered great pain of min d body and was otherwise damaged.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff, Roberto Ortiz requests that this Honorable Court enter judgement against Defendants Ms. Han, Ms. Nassif, Mr. Salemi, Ms. O'Brien, and Ms. Dookhan jointly and severally on all counts of this complaint and:

1. Award compensatory damages;
2. Award punitive damages;
3. Award interest and costs of this action to the Plaintiff, Mr. Ortiz;
4. Award attorneys' fees to Plaintiff; and
5. Award such other relief with this Court deems just and proper.

## **TRIAL BY JURY**

The Plaintiff claims and requests a trial by jury of any and all issues of fact and law as set forth and contained herein.

Respectfully Submitted,
Roberto Ortiz
By his attorney

_____
Daniel J. Ciccariello, Esq.
BBO #637529
Law Office of Daniel J. Ciccariello
15 Cottage Avenue
Quincy, MA 02169
617-770-9901